UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAY LIVINGSON LEE,

        Petitioner,           Case Number 22-12248
                                        Honorable David M. Lawson
v.

GARY MINIARD,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

A Genesee County, Michigan jury convicted petitioner Ray Lee of voluntary manslaughter and firearm offenses after he shot and killed Ray Pernell outside Pernell's Flint, Michigan house. The altercation started as a fist fight, but it escalated when Pernell was getting the better of Lee. Lee was arrested on the night of the shooting, and he remained incarcerated as a pretrial detainee for nearly two years. Lee was finally brought to trial on June 12, 2019.

Lee filed this habeas petition under 28 U.S.C. § 2254, arguing that his Sixth Amendment rights to a speedy trial and to the effective assistance of counsel were violated by the delay bringing him to trial and his lawyer's acquiescence in the delay. The Michigan courts denied those claims on direct appeal. Because the state courts' adjudication of the claims did not contravene or unreasonably apply clearly established Supreme Court law, the Court will deny the petition.

I.

Lee was charged with second-degree murder and firearm offenses. The trial evidence established that on the date of the incident Ray Pernell and his girlfriend, Renee Coney, drove to

- 1 -

Lee's house in Flint. Lee was standing in his front yard. The two men were close friends, but for reasons unknown to Coney, Pernell challenged Lee to a fistfight. As Pernell began to dominate and was beating Lee, Lee retrieved a handgun from his parked car and shot Pernell four times. Pernell died from the gunshot wounds the next day. Responding officers obtained a statement from Coney describing the altercation. She testified at trial and described the fight and shooting. Officers investigating the scene found a handgun and ammunition that forensic examiners matched with the bullets that caused Pernell's wounds. Another bullet found in Pernell was of a different caliber, but it might have been associated with a prior injury. Lee made a statement to police that Pernell had already been shot when he arrived at his house, but he advanced a self-defense claim at trial. The jury found Lee guilty of the lesser offense of voluntary manslaughter, felon in possession of a firearm, and commission of a felony with a firearm. *People v. Lee*, No. 350108, 2021 WL 2772865, at *1-4 (Mich. Ct. App. Jul. 1, 2021).

Here is the chronology of events starting with the arrest following the shooting:

July 24, 2017: Lee is arrested after the shooting.

August 2, 2017: Lee is arraigned in state district court.

August 16-September 20, 2017: The preliminary examination is held, and Lee is bound over for trial on second-degree murder and firearm offenses.

December 4, 2017: The first pretrial hearing is conducted before Genesee County Judge Judith A. Fullerton. The prosecutor states that he has not received any reports for the items sent to the lab for testing. ECF No. 8-6, PageID.199-200.

December 21, 2017: The parties state that they are still awaiting some of the test results and the autopsy report. ECF No. 8-7, PageID.205.

January 26, 2018: The parties state that some lab reports remain outstanding. ECF No. 8-8, PageID.210.

March 2, 2018: All the lab reports are complete.  The prosecutor asks for time to make a plea offer.  Defense counsel responds that he has no objection.  ECF No. 8-9, PageID.216-17.

April 6, 2018: Defense counsel represents that the parties are attempting to negotiate a plea deal.  The prosecutor indicates that negotiations were delayed because the victim's family requested time to consider a plea.  ECF No. 8-10, PageID.222-23.

April 30, 2018: The court states that the trial court is conducting another trial, and the trial date will have to be adjourned.  Defense counsel states that he has no objection.  ECF No. 8-11, PageID.227-28.

July 20, 2018: Defense counsel states that a plea offer has been made, and Lee requests more time to make a decision.  The prosecutor indicates her understanding that defense counsel met with Genesee County Prosecutor Leyton to obtain a new offer.  ECF No. 8-12, PageID.233-35.

August 21, 2018: A plea offer is placed on the record, and Lee rejects it.  ECF No. 8-13, PageID.238.

September 10, 2018: A new trial date set because the court is in trial.  ECF No. 8-13, PageID.238-39.

November 2, 2018: Lee rejects another plea offer.  ECF No. 8-14, PageID.233-34.

November 6, 2018: The prosecutor reveals that another bullet found in the victim was not tested, and an additional adjournment is necessary.  Recordings of phone calls made by Lee were also discovered and turned over to defense counsel.  Defense counsel states that he wants additional time to review the phone calls with Lee, and he requests additional time to negotiate a plea with the prosecutor.  ECF No. 8-15, PageID.251-52.  The court expresses dissatisfaction with the continued delay, but defense counsel indicates that he has no objection: "I don't have an objection to the, to the, uh, request.  The record or the file has to be complete, negotiations have started in earnest for the first time in 15 months.  Uh, after I listen to this and talk to my client, just, uh, your Honor, I'm not promising the Court anything but we may be able to resolve this."  *Id.* at PageID.253.

November 26, 2018: The prosecutor receives the lab report regarding the additional bullet.  ECF No. 8-16, PageID.258.

<u>December 3, 2018</u>: Defense counsel indicates that he reviewed the recently disclosed ballistic report with the defendant, discussed an additional plea offer, and conveyed a counteroffer. ECF No. 8-17, PageID.262-63.

<u>January 15, 2019</u>: The parties stipulate to adjourn the trial date. ECF No. 8-18, PageID.267.

<u>February 15, 2019</u>: Defense counsel indicates that the defense is awaiting trial, and a trial date is set for March. ECF No. 8-19, PageID.270.

<u>March-May, 2019</u>: The trial date is adjourned several times due to the retirement of Judge Fullerton and the reassignment of her docket. See ECF No. 8-20, PageID.276.

<u>May 21, 2019</u>: The first pretrial proceeding is held before newly assigned Judge Elizabeth Kelly. The parties indicate that they are ready to go forward to trial. *Ibid.*; *id.* at PageID.280.

<u>June 12, 2019</u>: Trial begins. ECF No. 8-21.

Following his convictions, Lee was sentenced as a second-time habitual felony offender to concurrent prison terms of 107 to 270 months for manslaughter and 28 to 90 months for felon in possession; both sentences were set to run consecutively to a two-year term for felony-firearm. Lee received 724 days of jail credit for the time spent in pretrial detention. ECF No. 8-25.

Lee filed a direct appeal in the Michigan Court of Appeals. His brief on appeal identified two claims, which were combined into a single argument: that he was denied his right to a speedy trial under the Sixth Amendment, and that his lawyer was constitutionally ineffective because he failed to object to the delay or move for a speedy trial or seek a lower bail. Lee also filed a motion to remand the case to the trial court to expand the record on his ineffective-assistance-of-counsel claim. The court of appeals granted the motion, and the case was remanded to the trial court for a hearing.

At the hearing, Lee's trial counsel, Robin Wheaton, testified that he had been practicing law for over forty years, and he primarily practiced criminal defense law in Genesee County. ECF No. 8-26, PageID.846. Wheaton testified that he was familiar with the right to a speedy trial, and that Lee did not waive his right to speedy trial on the record. *Id*. at PageID.847.

Wheaton recalled the initial pretrial delays were caused by the late receipt of lab tests. *Id*. at PageID.852. Wheaton did not request a reduction in bond because he thought it would not have been taken seriously. *Id*. at PageID.858-59. Wheaton thought there was no realistic chance at a pretrial release because of the murder charge. *Id.* at PageID.875.

Wheaton acknowledged that, in the end, none of the lab reports helped the defense. *Id*. at PageID.8667-68. Wheaton nevertheless agreed to the adjournments so that he would be fully prepared for trial. "In my mind, in order to . . . do a proper trial, to properly represent my client, I have to have every possible — anything the prosecutor is — may intend to use as evidence." *Id*. at PageID.868-69.

When asked why he did not press for a speedy trial and then use any missing reports to his advantage, Wheaton responded:

> What if one of those things that I didn't wait to get would have been beneficial to my client? That indeed would have been ineffective assistance of counsel. So that's why I didn't do it. I mean, I can't just presume things are going to be good or bad. I have to have it. And to do otherwise in my mind was worse, was more to the detriment of Mr. Lee than a speedy trial motion. So, yes, it could have been done that way. But if, if it turns out there was something I should have waited on, we'd be here now too. So, I mean, I picked my poison.

*Id*. at PageID.870.

Wheaton spoke with Lee about the decision to wait for all the reports. *Id*. at PageID.874. Wheaton gave the matter consideration, and based on "experience, based on the court, based on a

- 5 -

lot of things," he decided to "err" on the side of waiting for all the discovery over demanding a speedy trial. *Id*. at PageID.892-93.

Wheaton further testified that there was no plea offer made until March of 2018. *Id*. at PageID.872-73. From that point on, the parties were attempting to come to a resolution. *Ibid*. Wheaton believed based on the law and the facts of the case that an acquittal was not probable, but he did believe that there was a question whether manslaughter or second-degree murder was a more probable outcome. *Id*. at PageID.897. He indicated that he met with Lee and discussed this, and he wanted to try to avoid getting a second-degree murder conviction which was the reason he continued to negotiate with the prosecutor's office. *Ibid.*

Wheaton confirmed that the last set of adjournments was caused by the reassignment of the case after Judge Fullerton retired. *Id*. at PageID.900-01, 903. Wheaton said that he was ready for trial from March 2019 forward. *Id*. at PageID.907. Wheaton explained to Lee that all the time he was serving before trial would count as credit for the firearm charge that he was unlikely to beat. *Id*. at PageID.908.

Lee also testified at the hearing. *Id*. at PageID.932. Lee asserted that Wheaton did not come to visit him as often as he said. *Id*. at PageID.935. According to Lee, Wheaton never talked to him about why there was a delay in his trial, about the evidence, or about potential evidence that could be obtained through discovery, and Wheaton never talked to him about his speedy trial rights. *Id*. at PageID.936. Lee also testified that when he asked Wheaton whether he could get a different lawyer, Wheaton told him it was too late. *Id*. at PageID.937.

The trial court denied Lee relief. *Id*. at PageID.964-67.

Following supplemental briefing, the Michigan Court of Appeals affirmed Lee's conviction in an unpublished opinion. *Lee*, 2021 WL 2772865, at *1, 9. Lee then filed an application for leave to appeal in the Michigan Supreme Court, which was denied by standard form order. *People v. Lee*, 966 N.W.2d 383 (Mich. 2021) (table).

Lee's habeas corpus petition asserts two claims: the denial of a speedy trial and the ineffectiveness of his trial counsel. The warden argues that the speedy trial claim is procedurally defaulted because Lee never made a speedy trial demand in the trial court. The Michigan Court of Appeals acknowledged that defect but reviewed that claim for plain error. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.

*See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

A.

Lee's main argument is that his Sixth Amendment right to a speedy trial was violated by the nearly two-year delay in bringing him to trial. After observing that the claim was not preserved by an objection prior to trial, the Michigan Court of Appeals rejected the claim on plain error review. The court applied the federal balancing test set out in *Barker v. Wingo*, 407 U.S. 514 (1972). Considering the length of the delay, the court concluded that "the delay in this matter of almost 23 months triggers consideration of the other factors." *Lee*, 2021 WL 2772865, at *5. The court found that both the prosecution and the defense were at fault for the delay, but it concluded that the prosecutor did not engage in deliberate foot-dragging or bad faith. The court also took note that the defense agreed to several of the adjournments, and that agreeing to the delay to test the additional bullet was part of defense "counsel's strategy . . . to ensure a complete record so that no potentially exonerating evidence was missed." *Id.* at *6. That factor did not favor either side. Because the petitioner did not assert his speedy trial right in the trial court, the court of appeals weighed that against him. *Ibid.*

The court devoted most of its analysis to the fourth factor: prejudice. The court identified "two types of prejudice": "prejudice to his person and prejudice to his defense." *Ibid.* (citation omitted). The court found that prejudice to the defense was negligible. *Ibid.* Although the petitioner was given credit for the time spent in pretrial custody, the court acknowledged that "the experience of sitting in jail and waiting [is] unpleasant and traumatic," "uncertainty alone is stressful," and "jails are often more unpleasant than prisons, being relatively lacking in recreational or rehabilitative programs." *Ibid.* The court found, therefore, that prejudice was established.

- 9 -

The court ultimately held that the petitioner's speedy trial right was not violated. It reasoned that "given the seriousness of the charges, the neutral character of the delays and [the] acquiescence by defense counsel, the fact that defendant did not suffer any excess incarceration, and the total absence of any prejudice to the defense, the balance favors a finding that defendant was not deprived of his right to a speedy trial." *Id.* at *7.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. That right is clearly established by Supreme Court precedent, *e.g.*, *Barker v. Wingo*, and the Michigan Court of Appeals reasonably applied it. To determine whether a speedy trial violation has occurred, this Court must consider the same four factors discussed by the Michigan Court of Appeals: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. The court must weigh these factors in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533. But when doing so, the federal court must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). Lee has not rebutted the presumption of the correctness of the state court's factual findings.

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. And here, as the state court recognized, the interval between the accusation and the trial crossed the threshold dividing ordinary from presumptively prejudicial

delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). But delay alone does not establish a deprivation of Lee's speedy trial right. *Id.* at 655.

It was reasonable to conclude that the delay should be ascribed to both parties. The record shows that there were three broad factors driving the adjournments. First, there was an initial delay resulting from efforts to obtain the results of the lab tests and autopsy report. Then, when those items were received, the discovery of an untested bullet found in the victim and the recorded calls from Lee required additional investigative time. These matters certainly were not Lee's fault; they mostly were attributable to the investigators or labs. Nevertheless, the record clearly shows that defense counsel not only acquiesced to the adjournments, but he explicitly agreed to them. Defense counsel's agreement allowed the state court reasonably to conclude that this constellation of delays was a neutral factor. *Doggett*, 505 U.S. at 658; *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009).

The second set of delays was occasioned by the parties' seemingly slow-paced efforts at negotiating a plea bargain. It took months for the first offer to be made by the prosecutor. Defense counsel, after another substantial period, then spoke with the elected county prosecutor to obtain a better offer. And then at separate times both the victim's family and Lee requested periods of time to consider the plea offers. This extended plea-bargaining process is attributable to both parties.

Finally, the last period of delays was caused by the retirement of the original trial judge and the fact that the newly assigned judge was given a crowded docket. Lee was not responsible for this last delay, but the state court's contribution to the delay generally is considered a neutral

reason. *See Brillon*, 556 U.S. at 90 (stating that "neutral reasons" such as negligence or overcrowded dockets weigh against the state less heavily); *see also Barker*, 407 U.S. at 531.

There is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F.3d 314, 327-28 (6th Cir. 2008). There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner, *ibid.*; *see also Brown*, 498 F.3d at 531. The state courts' determination that the reasons for the delays were a neutral factor was reasonable.

Considering *Barker's* third factor, "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. On the other hand, a criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Ibid*. As the state court correctly found, Lee never asserted his right to a speedy trial. This factor tends to undermine the speedy trial claim.

Finally, the state court's prejudice determination is entitled to deference. *Schriro*, 550 U.S. at 473-74. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. State of Tenn.*, 507 F.3d 949, 954 (6th Cir. 1975). Lee does not argue that his trial defense was prejudiced by the delay: no defense witnesses became unavailable, and there is no contention of lost evidence or some other lost opportunity.

- 12 -

True, the lengthy pretrial incarceration caused Lee prejudice in the form of anxiety. Lee was housed in jail and languished there for almost two years awaiting an uncertain future. These consequences are a cognizable form of prejudice that the speedy trial guarantee is intended to address. *Barker*, 407 U.S. at 532-33. Nevertheless, it is also true that all of the time spent in jail was credited against Lee's sentence. And as defense counsel informed Lee, he had little chance of avoiding a prison sentence at least on the firearm charge. This fact mitigates the prejudice caused by the lengthy period of pretrial incarceration. *See Brown*, 498 F.3d at 532 ("First, no prejudice arose from Brown's pretrial incarceration because even if he had not been detained in this case, he would have been in state custody for [other pending cases].").

The state courts' "difficult and sensitive balancing" of these factors, *Barker*, 407 U.S. at 530, resulted in the conclusion that Lee "was not deprived of his right to a speedy trial." *Lee*, 2021 WL 2772865, at *7. When a state court engages in this sort of reasoned weighing of a general standard — as required by established Supreme Court law — section 2254(d)(2) directs a federal habeas court to afford that adjudication substantial deference. *Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004) ("Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). At the very least, it must be said that the decision was not "so lacking in justification" as to put it "beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103.

Lee is not entitled to habeas relief on this claim.

B.

Lee next argues that his trial counsel was constitutionally ineffective by failing to assert his right to a speedy trial. The Michigan Court of Appeals thoroughly evaluated this claim, concluding that counsel's decisions called for a choice between insisting on a speedy trial and risking the possible loss of exonerating evidence or a more favorable plea agreement. *Lee*, 2021 WL 2772865, at *8.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted). And most relevant here, where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The state court acknowledged that many of defense counsel's decisions may have been overly cautious. For instance, the defense in this case always was self-defense, and some of the delayed laboratory information was unlikely to impact that defense. But defense counsel was obliged "to conduct a reasonably complete investigation," and that choice cannot be assessed in hindsight. *Lee*, 2021 WL 2772865, at *8. The same can be said of the delay over plea negotiations, "which counsel opined would not have been benefitted by insisting on the right to a speedy trial." *Ibid*. The court of appeals also determined that any delay resulting from counsel's decisions did not cause Lee prejudice in the long run. The court reasoned:

- 15 -

> At the remand hearing, it appeared to have been tacitly agreed that if trial counsel had brought a speedy trial motion, the motion would have been granted. However, doing so would have gained no tactical or other practical advantage for the defense, and doing so would not have hampered the prosecution or induced the prosecution to extend a better plea offer. The only arguable benefit would have been defendant spending a different proportion of his time in prison instead of in jail. If counsel invoked the right to a speedy trial before discovery was complete, defendant would have risked the possibility of missing exonerating evidence. Invoking the right to a speedy trial during plea negotiations would have simply terminated those negotiations. By the time the eighteen-month "presumptive prejudice" period ran, there were serious scheduling conflicts due to the replacement of the trial judge and an upcoming complex case. Shortly thereafter the final trial date — on which trial was actually commenced — was set. Therefore, we do not think defendant has established that invoking the right to a speedy trial would have achieved anything. In any event, defendant has not overcome the burden of proving counsel's strategy to have been objectively unreasonable under the circumstances.

*Ibid.*

This decision reasonably applied the settled federal law. Lee failed to demonstrate prejudice under *Strickland*. He did not assert explicitly on direct appeal that there was a reasonable probability that the result of his trial would have been different had his counsel pressed for a speedier resolution. Instead, he attempted to show that he was prejudiced by his counsel's failure to seek a speedy trial in that it resulted in an inordinate and burdensome period of pretrial incarceration. That sort of harm is not the form of prejudice relevant under *Strickland*. The court of appeals' rejection of the argument therefore did not contravene the established standard.

Nor does the record suggest that Lee suffered any prejudice recognized by *Strickland* as the result of his counsel's decisions. Lee's self-defense claim was not diminished, nor was the prosecution's case strengthened. Lee presents no argument to the contrary. Finally, Lee has not shown how his attorney's strategic choices fell below conventional professional norms.

The state courts' decisions rejecting the petitioner's ineffective-assistance-of-counsel claim reasonably applied governing federal law as established by the Supreme Court.

III.

Neither of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 13, 2025